WOZNIAK v. FORD.

1. SALES—RESCISSION—FRAUD—MISREPRESENTATION — EVIDENCE —
QUESTION FOR JURY.
  Whether plaintiff's rescission of a contract for the pur-
  chase of a motorcycle on the ground that it was worn
  out and worthless and not in good running order as
  fraudulently represented by defendant was justifiable, held,
  under conflicting testimony, a question for the jury.

2. SAME—FRAUD—WAIVER.
  Where plaintiff spent considerable time and money in a
  good-faith effort to have the motorcycle put in running
  order, and as soon as he was advised, by an expert ma-
  chinist, that it could not be repaired he rescinded the
  contract, it cannot be said that he waived the fraud by
  not rescinding promptly.

3. SAME—PAYMENT OF NOTE—WAIVER.
  Nor was plaintiff's payment of a note given for the balance
  of the purchase price a waiver of said fraud, where it
  was paid while he was attempting to make the machine
  work, it was in the hands of a third party as collateral
  security, and he was advised by his counsel to pay it.

Error to Kent; Brown (William B.), J.   Submitted
October 11, 1921.   (Docket No. 87.)   Decided De-
cember 21, 1921.

Assumpsit in justice's court by Marion Wozniak
against George Ford for fraud in the sale of a motor-
cycle.   There was judgment for plaintiff, and de-
fendant appealed to the circuit court.   Judgment for
plaintiff.   Defendant brings error.   Affirmed.

*John M. Dunham,* for appellant.

BIRD, J.   Plaintiff purchased a second-hand motor-

cycle of defendant for his young son.    The purchase
was made on August 19, 1919, and the consideration
paid therefor was $75, as follows:    $35 cash, $30
for a second-hand bicycle, and a 30-day note for $10.
At the time the purchase was made plaintiff claims
defendant represented to him that the motorcycle was
all right and in good running order, except the grip
handle, and he would have that repaired, which he
did, and delivered the same to plaintiff at his farm a
few miles distant from Grand Rapids.    Plaintiff's boy
attempted to operate the motorcycle. but did not suc-
ceed.    Plaintiff took it to the garage several times
and afterwards had it examined and tinkered by an
expert, but all efforts to make it work proved of no
avail.    Plaintiff then rescinded the contract, returned
the motorcycle to defendant and demanded what he
had paid therefor.    Defendant refused to acquiesce
in this and suit was begun to recover the purchase
price.    The trial resulted in a judgment for plaintiff.

The principal assignment of error relied on by de-
fendant was the refusal of the trial court to direct a
verdict in his behalf.    His position is that no fraud
or misrepresentation is shown by the testimony.    He
further urges that if there were any fraud or mis-
representation  proved plaintiff waived his right to
complain of it because he did not do so promptly.    It
is true that defendant's proofs tended to show that
the motorcycle was in good working order when it
was delivered to plaintiff, but plaintiff's proofs tended
to show that the motorcycle was worn out and worth-
less when it was sold to him.    During the time plain-
tiff had possession of it he was attempting to get it
repaired so it would run.    He took it to the garage
on several occasions and expended upwards of $20
in garage charges.    Then he had it examined and
worked on by an expert, who concluded, after working
on it some time, that it was worn out and could not

be repaired. There is some testimony leading to the conclusion that the failure of the motorcycle to run was due to the young boy's inefficiency. If it were due to this plaintiff had no cause to complain. On the other hand, if it failed to run by reason of the defects in the machinery when it was purchased, plaintiff had cause to complain. This was the crucial question. It was one of fact and the trial court very properly submitted it to the jury.

In reply to the point that the fraud was waived by the failure of plaintiff to complain of it promptly, it may be said that plaintiff appears to have been engaged in a good-faith effort to have the machine repaired and put in running order. He spent considerable time and money to do so. Neither he nor his son was acquainted with the construction or operation of motorcycles. The last expert who worked on it gave it up as a hopeless job and advised plaintiff that it could not be made to run because it was worn out. After being so advised plaintiff promptly rescinded the contract and demanded the money and property which he had paid for it. Had plaintiff learned soon after he purchased it that it could not be repaired and he had not rescinded the contract until two months thereafter, it would have presented a different question. In view of the effort made by plaintiff to have the machine repaired and the advice which he finally received that it could not be repaired, we do not think it should be said that he did not rescind the contract promptly after learning he had been defrauded.

Plaintiff did not pay the note when due, but did a few days thereafter, and during the time he was attempting to make the machine work. This might have some bearing on his waiver of the fraud were it not for the fact that the note was in the hands of a third party as collateral security, and the further fact that he was advised by his counsel to pay it.

Payment under these circumstances was not very significant.

The remaining errors have been examined but we find no merit in them.

The judgment is affirmed.

STEERE, C. J., and WIEST, STONE, CLARK, and SHARPE, JJ., concurred. MOORE and FELLOWS, JJ., did not sit.